IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES WATKINS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 14-cv-01049 RAL |
| ITM RECORDS, et al | : | |
| Defendants. | : | |

RICHARD A. LLORET                                      September 23, 2015
U.S. MAGISTRATE JUDGE

## MEMORANDUM AND ORDER

Before me is a motion for attorneys' fees filed by Trans World Entertainment Corporation[1] ("TWE"). *See* Doc. No. 120. On July 24, 2015, I entered an order dismissing a complaint filed by James Watkins ("Plaintiff") with leave to amend. The Plaintiff failed to amend his complaint during the 14 day window. This motion for attorneys' fees was filed by TWE as the prevailing party on August 13, 2015, seven days after the 14-day period provided in my July 24, 2015 order.

In his complaint, James Watkins, the copyright owner of a 1989 jazz/funk album "Intense," alleges that 14 defendants infringed on his copyright by "recording, mixing, mastering, distributing, selling, licensing, and/or receiving revenue from the Subject Album." *See* Complaint, Doc. No. 1, at ¶ 16. That complaint asserted claims on the grounds of copyright infringement for mechanical license and royalties (Count I), copyright infringement (Count II), injunctive relief (Count III), and a requests an accounting (Count IV).

Following plaintiff's failure to refile his complaint, counsel for TWE filed a

---

[1] TWE regularly does business as "f.y.e.," a chain of stores selling movies, music, and other media. I will sometimes refer to FYE instead of TWE. For the purposes of this opinion, they are interchangeable.

motion for attorneys' fees. Plaintiff responded on August 28, 2015. *See* Doc. No. 124. I held oral argument on September 21, 2015.

After careful review of the pleadings, including affidavits from the various parties, I will award attorneys' fees to counsel for TWE in the amount of $13,650.00, the full amount sought by TWE.

## Standard of Review

TWE seeks an award of attorneys' fees under The Copyright Act, a federal statute that provides for reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505. A prevailing party is considered one who is able to "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). These fees are not automatically awarded, but rather discretionary decisions left to the courts. *See American Bd. of Internal Medicine v. Von Muller*, 540 Fed. Appx. 103, 106 (3d Cir. 2013) (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d. Cir. 1986)).

The Supreme Court provided a number of nonexclusive factors courts should consider in making an award for attorneys' fees under the Copyright Act. "These factors include 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994) (citing *Lieb*, 788 F.2d at 156). The standard for awarding attorneys' fees need not be "exceptional," which is the usual standard found in trademark or patent infringement cases. *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 281-82 (3d Cir. 2000). Other courts in this jurisdiction have found that "post-*Fogerty*, courts have increasingly awarded attorney's fees to prevailing defendants." *See Warren Pub. Co.*

*v. Spurlock*, No. 08-3399, 2010 WL 760311, at *3 (E.D. Pa. Mar. 3, 2010) (citing Jeffrey

Edwards Barnes, Comment, *Attorney Fee Awards in Federal Copyright Litigation After*

Fogerty v. Fantasy: *Defendants Are Winning Fees More Often, But the New Standard*

*Still Favors Prevailing Plaintiffs*, 47 UCLA L. REV. 1381, 1390 (2000)).

    The *Spurlock* case analyzed three different factors under *Lieb* for determining

whether the award of attorneys' fees was appropriate. These include: (1) frivolousness

and objective unreasonableness (in the factual and legal aspects of the case), (2) the

motivation of the plaintiff and (3) the need to advance considerations of compensation

and deterrence. *See id.* at *4 (citing *Forgerty*, 510 U.S. at 535 n. 19 (further citations

omitted)). TWE is clearly the prevailing party as the Plaintiff failed to refile his complaint

within the 14 day window I granted in my Order of July 24, 2015.

## A. Frivolousness and Objective Unreasonableness

    Frivolousness means a lack of any plausible merit. *See Spurlock*, 2010 WL

760311, at *4 (citing *Matthew Bender & Co. v. West Pub. Co.*, 240 F.3d 116, 126 (2d Cir.

2001)). Objective unreasonableness includes a factual and legal component. *See Schiffer*

*Pub. v. Chronicle Books*, No. Civ.A.0003–44444962, 2005 WL 1244923, at *4 (E.D. Pa.

May 24, 2005) (citing *Lieb*, 788 F.2d at 156). *Schiffer* stated that this factor is entitled to

substantial weight, noting that parties should not be punished for advancing reasonable,

albeit losing, positions. *See id.* (citing *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d

70, 75 (1st Cir. 1998)).

    Turning to the frivolity of the complaint, I find that the complaint, in and of itself,

may not have been frivolous from the outset. Though Watkins sued over a dozen parties,

the complaint, and the claims contained therein, are not facially meritless. But part of

the *Spurlock* case also considered different aspects, including evidence of settlement

efforts and engaging in excessive motions practice. *See Spurlock*, 2010 WL 760311, at *4. This is important, as TWE has highlighted a number of matters that could rise to the level of the first part of this test found in *Lieb*. These include disputes over defense counsel's billing and Plaintiff's lost document excuse. I will address the two arguments briefly.[2]

1. *Billing Disputes*

Plaintiff makes the argument that TWE's counsel billed for non-billiable items. This includes a lunch where "much of the time meeting was to get to know each other..." *See* Doc. No. 124, at 10. TWE responds by noting that in the declaration, which was attached to the initial motion for attorneys' fees, only .3 hours of the 1.6 hours were actually charged to TWE. The rest was designated "No Charge." *See* Doc. No. 120-1, Exhibit B.

Reviewing the time sheets provided by TWE's counsel, there is nothing to indicate counsel in anyway overcharged or overbilled for his services. He spent less than 3 hours preparing a motion to dismiss (*Id.* at 5), did not charge for research into liability for advertising work for sale (*Id.* at 1), and took only an hour to prepare and serve interrogatories to Plaintiff. *Id.* at 4. There is no evidence here that TWE's counsel overbilled on any matter. This is important, as it goes to the reasonableness of the attorneys' fees themselves. *See, e.g.*, 17 U.S.C. § 505 ("the court in its discretion may .... award a *reasonable attorney's fee* to the prevailing party as part of the costs.") (emphasis added).

---

[2] Plaintiff also argues that TWE's motion for attorney's fees is untimely pursuant to Fed. R. Civ. P. 54(d)(2)(B). Doc. No. 124, at 8-9. However, TWE is correct in stating that my order of July 24, 2015 was not a final judgment. Hence, the 14-day requirement does not apply.

2. *Lost Document Excuse*

According to the Plaintiff, his counsel "was unable to locate the web page information presented to [his lawyer] by Watkins, showing that FYE had offered 'Intense' for sale and/or sold 'Intense.'" Doc. No. 124, at 7. TWE argues that

> Watkins' answers to requests for admission establish that Watkins
> - has no documents reflecting any sale of "Intense,"
> - is not aware of a single sale of TWE of "Intense"
> - does not possess a single document reflecting TWE offered to sell "Intense."

*See* Doc. No. 121, at 2 (internal citations omitted). Plaintiff offers a different explanation. He claims in his pleadings that at the very first meeting between his counsel and counsel for TWE, defense counsel admitted that FYE informed him the company offered "Intense" for sale and that it specifically had been placed in its system, but denied that the album had ever been sold. Doc. No. 124, at 6. As proof of this, Plaintiff's counsel points to interrogatories sent to FYE, which asks for the name and contact information of the individuals who put "Intense" in the database for sale. *Id.* Counsel for Plaintiff "would never have  known to use the phrase '…placed into the FYE system' but for the fact that he heard those words from [TWE counsel] himself." *Id.* at 7.

Further complicating matters is counsel for Plaintiff's contention that he supplied FYE with computer printouts allegedly demonstrating that FYE had offered "Intense" for sale on its website. *Id.* Plaintiff explains that

> There were approximately two hundred (200) web pages printed out by Watkins and presented to [his counsel],,and no more than one or a few of them related to FYE. [Plaintiff's counsel] has been unable to locate the FYE documentation, and plaintiff claimed to have given his only copy thereof to [his lawyer].

*Id.* In light of this lost document, TWE notes that Plaintiff never filed a discovery request asking for the display of "Intense" on TWE's website and never described his steps to try to reacquire that document. *See* Doc. 126, at 3. In addition, Plaintiff failed to

identify the URL depicted in the document, the person who accessed the website showing "Intense" was for sale, the date the person accessed the website, and the specific statements displayed on the website suggesting that TWE ever offered "Intense" for sale. *Id.* While TWE admits that it may have listed data about "Intense," it never actually listed the album for sale. *Id.* (citing Doc. No. 96, at 3). Listing the data about a record is much different from offering that album for sale. *Id.*

This was all compounded by the fact that the Plaintiff himself lost this document sometime in June of 2014. Doc. No. 124, at 7. In light of this loss, Plaintiff made the "reasonable" offer of $2,500 to TWE to settle the case. *Id.* Plaintiff continues that if FYE never displayed "Intense" in its online system, defense counsel should have notified the Plaintiff. *Id.* at 8. However, TWE *did* notify the Plaintiff through the discovery disclosures that Watkins lacked a factual basis for asserting his claims. *See* Doc. No. 121, at 2 (citations omitted).  He had no documents reflecting any sale by TWE of "Intense" and did not provide a single document reflecting that TWE offered to sell "Intense." *Id.* TWE continued by writing that "Watkins' Rule 26(a) disclosures show Watkins is not aware of a witness who can testify that TWE sold or offered to sell 'Intense,' they establish that Watkins lacked an objectively reasonable basis to allege TWE sold or offered to sell 'Intense.'" *Id.* at 2-3. TWE also writes that these pleadings demonstrate that Watkins was "merely speculating" that TWE sold or offered to sell "Intense." *Id.* at 3.

I am constrained to agree. Plaintiff spends little time refuting the frivolity and objective unreasonableness of this case. He claims that the rightful copyright to "Intense" was attached to the complaint and that his music was apparently unlawfully offered for sale over the internet. Doc. No. 124, at 13. He also claims that he had a

document showing "Intense" was offered for sale, but lost it. *Id.* While Plaintiff's rightful copyright in musical works is an important first step, that is certainly not dispositive in demonstrating FYE offered the work for sale online or in stores. Further, the fact that other retailers might or might not have offered "Intense" for sale carries no weight with respect to any claims asserted specifically against FYE. Plaintiff's only counter to the frivolity and unreasonableness argument is a document that he no longer has.

Plaintiff also goes on to argue that he was not unreasonable, as the only defendants named in the 2014 suit were those offering "Intense" for sale over the internet. *Id.* But once again, this leads me back to my original point that this "lost document," which supposedly was the foundation for Plaintiff's claims against TWE, is not available to any of the parties. There is no proof that this document ever existed other than information provided by the Plaintiff in his pleadings. I dismissed the original complaint without prejudice because its scattershot allegations failed to raise cognizable claims against TWE. In lieu of amending the complaint with some information that may rectify those shortcomings in the pleadings, Plaintiff failed to do so. He now submits that this lost document can save him from paying reasonable attorneys' fees. Under this prong, I believe it cannot.

## B. Improper Motivation

"Parties are improperly motivated only if they do not have 'a good faith intent to protect a valid interest, but rather a desire to discourage and financially damage a competitor by forcing it into costly litigation.'" *See Schiffer Pub.*, 2005 WL 1244923, at *4 (quoting *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 140 F.Supp.2d 111, 116 (D. Mass. 2001)). This portion of the *Lieb* test allows for a discussion of some of the Plaintiff's settlement positions throughout this litigation. Plaintiff claims his motivation

7

was two-fold: 1) to cease the illegal dissemination of his music across the Internet and 2) "to receive monetary compensation for FYE's unlawful commercial exploitation of [his] music." Doc. No. 124, at 14. Plaintiff also claims that he "tendered a reduced demand of less than $3,000 near the outset of this litigation, when [he] was unable to locate supportive documentation, and even after FYE's counsel acknowledged that FYE offered 'Intense' for sale in its system." *Id.*

TWE notes that its "website listed data about Watkins' 'Intense' but indicated it was not available for sale." *See* Doc. No. 126, at 3 (citing Doc. No. 96, at 3). Even with this lack of proof, the plaintiff demanded approximately $2,500.00 to settle the matter. *Id.* Plaintiff claims, in the same document, that he made this demand "not long after June 3, 2014." *Id.* at 7. Interestingly, Plaintiff increased his demand in March of 2015 by approximately 13 times the amount, requesting $33,600. *See* Doc. No. 126, Exhibit D. He also apparently reneged on an offer to voluntarily dismiss TWE, served additional discovery demands, and had a protective order filed as a result of his refusal to discuss his discovery issues. Doc. No. 126, at 4.

The key issue here is that Plaintiff's "proof" of any claims against TWE vanished sometime around June 2014. Though he had numerous opportunities to do so, he elected not to dismiss TWE from the action. Nearly a year after losing his evidence, Plaintiff substantially raised his settlement demand. He now tries to excuse the shortcomings in his litigating position by arguing they were taken in good faith. I find that there was improper motivation on the part of the Plaintiff to squeeze settlement money out of TWE.

### C.  Compensation and Deterrence

Turning back to *Spurlock*, the court noted that the defendant requested attorneys' fees on the grounds that it would dissuade plaintiffs from bringing questionable claims. *See* 2010 WL 760311, at *13. The court went on to note that questionable litigation strategies and misrepresentations may constitute behavior warranting deterrence. *Id.* at *14. Plaintiff argues that there was "no act, deed[,] or conduct that was vexatious, harassing [,] or improper on behalf of the plaintiff. Conversely the representation to plaintiff by defendant that FYE had offered plaintiff's music for sale was improper." Doc. No. 124, at 15.

This argument hints at a strange position the Plaintiff appears to take, that counsel for TWE "lulled" the Plaintiff into continuing the action even though defense counsel knew that TWE had never offered "Intense" for sale. Doc. No. 126, at 4-5. TWE claims that it never encouraged Plaintiff to continue the dispute, and it also refutes the notion that the company ever represented that the plaintiff's album was for sale. *See id.* at 5 n. 3. This is corroborated by the fact that TWE asked for Watkins to voluntarily dismiss it from the case. *Id.* at 4 (citing Doc. No. 126, Exhibit A). I find that Plaintiff's position is nonsensical. TWE did not "lull" him into continuing his case. He did that on his own. Plaintiff should have dismissed his case. Instead, he stonewalled.

### D.  Timeliness of the Defendant's Motion

The plaintiff argues that my order of July 24, 2015 was a final judgment, and that the defendant had 14 days within which to file a motion for attorneys' fees. Doc. No. 124, at 8 (citing to Fed. R. Civ. Pro. 54(d)(2)(B)). He is wrong. My order of July 24, 2015 was not a final judgment, as it did not dispose of all claims against all the parties in the case and was not appealable absent a certification under Fed. R. Civ. Pro. 54(b). *See Elliott v.*

9

*Archdiocese of New York*, 682 F.3d 213, 229 (3d Cir. 2012) (absent a Rule 54(b) certification, a Rule 12(b) dismissal against less than all the defendants was not an appealable final judgment). Even if this were a single defendant case, a motion to dismiss without prejudice would not be a final judgment absent manifestation of plaintiff's intent to stand on his initial pleading without amendment. *See Frederico v. Home Depot*, 507 F.3d 188, 192-93 (3d Cir. 2007). There was no such manifestation of intent before the expiration of the 14-day period for amendment in my July 24, 2015 order. Under any reading of the circumstances there has been no final judgment entered. The defendant's motion for attorneys' fees was timely.

**E.      Whether a Rule 54(b) Order Should be Entered**

Rule 54(b) orders "should not be entered routinely or as a courtesy or accommodation to counsel[,]" but they may be entered to permit a "more satisfactory disposition of litigation[.]" *Elliott*, 682 F.3d at 220. I am required first to determine if there has been an "ultimate disposition" as to a party "such that there is a 'final judgment.'" *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)). I must then determine if there is no just reason to delay the appeal. *Id.* To do this I must consider "judicial administrative interests as well as the equities involved." *Id.* (quoting *Curtiss-Wright Corp.*, 446 U.S. at 7-8). These administrative interests counsel against piecemeal appeals. 446 U.S. at 8. If the claims are "separable from the others remaining to be adjudicated and . . . no appellate court would have to decide the same issues more than once even if there were subsequent appeals[,]" I may enter an order finding there is no just reason for delay. *Id.*

Neither party has moved for a Rule 54(b) order. Given that such orders should not be granted routinely, I will not enter such an order *sua sponte*, but will leave it to the

parties to sort out their positions on the subject. I write simply to ensure that it is absolutely clear that there has been no final order entered yet in this case.

### Conclusion

Plaintiff lacked proof as far back as June 2014 that the Defendant had infringed upon his copyright. He increased his settlement demands in March of 2015 to approximately $33,000. He did this with the knowledge that he had no evidence linking TWE to any wrongful activity. In addition, he had every opportunity to voluntarily dismiss his claims. When I ordered him the opportunity to replead with greater specificity, he failed to do so. An accompanying Order follows.


**BY THE COURT:**


 *s/Richard A. Lloret*
**RICHARD A. LLORET**
**UNITED STATES MAGISTRATE JUDGE**